DAVEY v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 65227. Argued October 14, 1981 (Calendar No. 9).—De-
cided August 9, 1982.

Donald J. Davey was killed in a motor vehicle accident. Joy A.
Davey, his widow, brought an action in the Jackson Circuit
Court against the Detroit Automobile Inter-Insurance Ex-
change, seeking to extend the provision of the no-fault act
which requires annual cost-of-living adjustment of work loss
benefits to the section of the act providing survivors' loss
benefits. At the time of the accident, the act did not require
such an adjustment for survivors' loss benefits. Additionally,
she sought to recover an amount set off by the DAIIE because
of social security and veteran's benefits which she received. In
May of 1978, the court, James G. Fleming, J., ruled that the no-
fault act's set-off provision and its distinction between the work
loss and survivors' loss benefits were unconstitutional on equal
protection grounds and awarded the plaintiff benefits not re-
duced by a setoff and adjusted for cost-of-living increases. In
October of 1978, the Legislature amended the no-fault act to
provide cost-of-living increases in survivors' loss benefits. On
January 4, 1979, the Supreme Court, in another case, held the
set-off provision of the no-fault act to be constitutional. On
January 11, 1979, the plaintiff moved the trial court to enforce
its judgment, and the court granted the motion on March 14,
1979. The Court of Appeals, MacKenzie, P.J., and Bashara and
D. C. Riley, JJ., affirmed in an opinion per curiam (Docket No.
44477). The defendant appeals.

In an opinion by Justice Williams, joined by Chief Justice
Coleman and Justices Kavanagh, Levin, Fitzgerald, and Ryan,
the Supreme Court held:

The exclusion by the Legislature of cost-of-living adjustments
from no-fault survivors' loss benefits was reasonably related,
under the state and federal constitutions, to the permissible

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 7 Am Jur 2d, Automobile Insurance §§ 25-27, 363.
Entitlement of child, spouse, parent, or other person to survivor's
loss benefit under no-fault insurance acts. 12 ALR4th 975.

objectives of the no-fault act to provide assured, adequate, and prompt recovery for certain economic losses arising from motor vehicle accidents and to contain the premium costs of no-fault insurance. The distinction does not violate the plaintiff's equal protection or due process rights solely because the act was amended to include cost-of-living adjustments after the plaintiff became entitled to survivors' loss benefits.

1. The test in determining whether socioeconomic legislation enacted pursuant to the state's police power comports with due process and equal protection guarantees is whether the legislation bears a reasonable relation to a permissible legislative objective. A party challenging the constitutional propriety of such legislation must show that the legislative scheme is without reasonable justification.

2. The permissible objective of the no-fault act is to provide assured, adequate, and prompt recovery for certain economic losses arising from motor vehicle accidents. Additionally, the Supreme Court has recognized the complementary legislative objective of containing premium costs of no-fault insurance. The provision for survivors' loss benefits are reasonably related to these objectives.

3. Inquiry into a legislative action or judgment is restricted to a determination whether there is any state of facts known or which reasonably could be assumed which affords support for the action. Where such support exists, the action must be accepted although the facts may be debatable. In this case, the greater pecuniary benefit provided by the survivors' loss benefits supports the legislative decision to provide cost-of-living increases for work loss benefits, but not for survivors' loss benefits; thus, the distinction between work loss and survivors' loss benefits is found to be reasonably related to the statutory objectives.

Reversed and remanded.

Justice Moody, dissenting, would hold that the most reasonable construction of the Legislature's action in amending the no-fault act to provide cost-of-living increases for survivors' loss benefits as well as work loss benefits is that it is an attempt to clarify the original meaning of the act, rather than to substantively change the law. Application of the increases to the plaintiff's award would not be inconsistent with the purpose of this act. He would affirm the decisions of the Court of Appeals and the trial court requiring payment of cost-of-living increases, and would not address the plaintiff's equal protection and due process arguments.

98 Mich App 123; 296 NW2d 12 (1980) reversed.

OPINION OF THE COURT

1. INSURANCE — NO-FAULT INSURANCE — SURVIVORS' BENEFITS —
   COST-OF-LIVING ADJUSTMENTS — CONSTITUTIONAL LAW.
   The former exclusion by the Legislature of cost-of-living adjust-
   ments from no-fault survivors' loss benefits was reasonably
   related to the permissible legislative objectives to provide as-
   sured, adequate, and prompt recovery for certain economic
   losses arising from motor vehicle accidents and to contain the
   premium costs of no-fault insurance and did not violate the
   equal protection or due process rights of a person entitled to
   such benefits (MCL 500.3108; MSA 24.13108).

2. INSURANCE — NO-FAULT INSURANCE — SURVIVORS' BENEFITS —
   COST-OF-LIVING ADJUSTMENTS — CONSTITUTIONAL LAW.
   A person whose entitlement to survivors' loss benefits under the
   no-fault act arose before the Legislature amended the act to
   provide cost-of-living adjustments for such benefits is not enti-
   tled to receive cost-of-living increases in benefits on grounds of
   due process or equal protection (MCL 500.3108; MSA 24.13108).

DISSENTING OPINION BY BLAIR MOODY, JR., J.

3. INSURANCE — NO-FAULT INSURANCE — SURVIVORS' BENEFITS —
   COST-OF-LIVING ADJUSTMENTS.
   *The most reasonable construction of the Legislature's action in
   amending the no-fault act to provide cost-of-living increases for
   survivors' loss benefits is that it is an attempt to clarify the
   original meaning of the act, rather than to substantively
   change the law, and application of the amendment to a person
   whose entitlement to benefits arose before the enactment of the
   amendment would not be inconsistent with the purpose of the
   act (MCL 500.3108; MSA 24.13108).*

*Stanton, Bullen, Nelson, Moilanen & Klaasen,
P.C. (by Terry J. Klaasen),* for plaintiff.

*Jerome A. Susskind, P.C. (by Jerome A. Suss-
kind),* for defendant.

WILLIAMS, J. This case concerns whether the
Legislature violated constitutional due process or
equal protection in providing for cost-of-living in-
creases for no-fault insurance *work* loss benefits
under MCL 500.3107(b); MSA 24.13107(b) but not

for no-fault insurance *survivors'* loss benefits under MCL 500.3108; MSA 24.13108. Plaintiff argues increases in the cost of living affect both classes alike. However, we find that the greater pecuniary benefit provided by survivors' loss benefits supports the legislative decision to provide cost-of-living increases for work loss benefits but not for survivors' loss benefits. Therefore, we hold that there is no lack of equal protection and that there was due process. We reverse the judgments of the Court of Appeals and the trial court.

Since we have reversed the trial court's judgment, the plaintiff is not entitled to the interest requested or attorney fees. We remand the case to the trial court for computation of survivors' loss benefits not inconsistent with this opinion.

## I. FACTS

Plaintiff's husband was killed in a motor vehicle accident on August 7, 1975. The decedent had been insured by the defendant at the time of his death. Defendant was prepared to pay plaintiff, as survivor, the $1,000 maximum benefit authorized by MCL 500.3108; MSA 24.13108[1] as the earnings of plaintiff's decedent entitled her to that amount. A

[1] MCL 500.3108; MSA 24.13108 as originally enacted read:

"Personal protection insurance benefits are payable for a survivors' loss which consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value, not including services, that dependents of the deceased at the time of his death would have received for support during their dependency from the deceased if he had not suffered the accidental bodily injury causing death and expenses, not exceeding $20.00 per day, reasonably incurred by these dependents during their dependency and after the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit if he had not suffered the injury causing death. The benefits payable for survivors' loss in connection with the death of a person in a single 30-day period shall not exceed $1,000.00 and is not payable beyond the first 3 years after the date of the accident." 1972 PA 294, § 3108.

dispute arose between plaintiff and defendant over the proper amount. Plaintiff filed suit in the Jackson Circuit Court, alleging that she was entitled to the maximum amount of benefits adjusted to $1,-111 per month because of increases in the cost-of-living index as computed by the insurance commissioner. At the time of the accident, § 3108 did not contain the proviso which subsequently mandated that survivors' loss benefits reflect changes for increases in cost of living.[2] Plaintiff also alleged that the amount of benefits to be paid under § 3108 did not have to be set off by social security and veterans' benefits received by the plaintiff.[3]

[2] Section 3108 was amended by 1978 PA 459, which became effective on October 16, 1978. It now provides:

"(1) Except as provided in subsection (2), personal protection insurance benefits are payable for a survivor's loss which consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value, not including services, that dependents of the deceased at the time of the deceased's death would have received for support during their dependency from the deceased if the deceased had not suffered the accidental bodily injury causing death and expenses, not exceeding $20.00 per day, reasonably incurred by these dependents during their dependency and after the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit if the deceased had not suffered the injury causing death. Except as provided in section (2) the benefits payable for a survivor's loss in connection with the death of a person in a single 30-day period shall not exceed $1,000.00 for accidents occurring before October 1, 1978, and shall not exceed $1,475.00 for accidents occurring on or after October 1, 1978, and is not payable beyond the first three years after the date of the accident.

"(2) The maximum payable shall be adjusted annually to reflect changes in the cost of living under rules prescribed by the commissioner. A change in the maximum shall apply only to benefits arising out of accidents occurring subsequent to the date of change in the maximum. The maximum shall apply to the aggregate benefits for all survivors payable under this section on account of the death of any one person."

[3] MCL 500.3109; MSA 24.13109 indicates that other governmental benefits provided for under the laws of any state or the federal government are to be subtracted from personal protection benefits paid under the no-fault act which includes survivors' loss benefits. See fn 2. See also *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524; 273 NW2d 829 (1979). Section 3109 provides:

"(1) Benefits provided or required to be provided under the laws of

The trial court ruled that the no-fault set-off provision was unconstitutional, since the Court of Appeals had so held in *O'Donnell v State Farm Mutual Automobile Ins Co,* 70 Mich App 487; 245 NW2d 801 (1976). It also awarded the plaintiff $1,111 for each 30-day period—the amount her husband would have been entitled to receive under MCL 500.3107(b); MSA 24.13107(b) if he had survived, but was disabled because of a motor vehicle accident. Section 3107(b) has always been adjusted for increases in cost of living.[4] In short, the trial

---

any state or the federal government shall be subtracted from the personal protection insurance benefits otherwise payable for the injury.

"(2) An injured person is a natural person suffering accidental bodily injury.

"(3) An insurer providing personal protection insurance benefits may offer, at appropriately reduced premium rates, a deductible of a specified dollar amount which does not exceed $300.00 per accident. This deductible may be applicable to all or any specified types of personal protection insurance benefits but shall apply only to benefits payable to the person named in the policy, his spouse and any relative of either domiciled in the same household. Any other deductible provisions require the prior approval of the commissioner."

[4] MCL 500.3107(b); MSA 24.13107(b) states that:

"(b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured and expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or of his dependent. Work loss does not include any loss after the date on which the injured person dies. Because the benefits received from personal protection insurance for loss of income are not taxable income, the benefits payable for such loss of income shall be reduced 15% unless the claimant presents to the insurer in support of his claim reasonable proof of a lower value of the income tax advantage in his case, in which case the lower value shall apply. The benefits payable for work loss sustained in a single 30-day period and the income earned by an injured person for work during the same period together shall not exceed $1,000.00, which maximum shall apply pro rata to any lesser period of work loss. The maximum shall be adjusted annually to reflect changes in the cost of living under rules prescribed by the commissioner but any change in the maximum shall apply only to benefits arising out of accidents occurring subsequent to the date of change in the maximum."

court agreed with the plaintiff that the distinction between work loss benefits and survivors' loss benefits violated the principle of equal protection of law and that the cost-of-living increase provided under § 3107(b) should also apply to § 3108.

In *O'Donnell v State Farm Mutual Automobile Ins Co*, 404 Mich 524; 273 NW2d 829 (1979), this Court overruled the Court of Appeals by holding that the set-off provision of the act was constitutional. In 1978, the Legislature amended § 3108 so as to include cost-of-living increases in survivors' loss benefits.[5]

On January 11, 1979, plaintiff filed a motion to enforce its earlier judgment in the trial court, claiming that the defendant had not paid the $1,111 for each 30-day period along with interest and attorney fees as ordered by the court. The trial court granted plaintiff's motion to enforce the judgment in an opinion dated March 14, 1979. The opinion also indicated that the parties had agreed between themselves as to how to deal with the set-off issue subsequent to this Court's holding in *O'Donnell*.

The Court of Appeals granted the defendant's delayed application for leave to appeal. It affirmed in a per curiam opinion since it found no reasonable relation between the no-fault compensation objectives and the cost-of-living distinction in § 3108. *Davey v DAIIE*, 98 Mich App 123; 296 NW2d 12 (1980).

We granted defendant's application for leave to appeal on May 8, 1981. 411 Mich 900 (1981).

[5] See fn 2, *supra*.

## II. EQUAL PROTECTION AND DUE PROCESS

The basic issue in the instant appeal is whether the legislative classification denying cost-of-living adjustments to recipients of *survivors'* loss benefits under MCL 500.3108; MSA 24.13108, while allowing such adjustments to recipients of *work* loss benefits under MCL 500.3107; MSA 24.13107, constitutes a denial of due process or equal protection of law under the state and federal constitutions. Before identifying and applying the proper test of judicial review in determining the constitutional propriety of this classification, an explication of the arguments of the parties may aid in understanding our discussion.

### A. *The Contentions of the Parties*

The plaintiff contends that the no-fault statutory scheme arbitrarily creates two classes of people. One class is made up of persons suffering non-fatal injuries in motor vehicle accidents—along with the dependents of the injured insured. MCL 500.3107(b); MSA 24.13107(b). The other legislative class of people is the surviving dependents of persons suffering fatal injuries in motor vehicle accidents. MCL 500.3108; MSA 24.13108.

At the time of the adoption of the no-fault act, the maximum amount payable to both groups in any 30-day period was $1,000. Section 3107(b), authorizing the payment of *work* loss benefits, stated that such benefits should also reflect annual changes in the cost of living. At the time the plaintiff's decedent was killed in a motor vehicle accident, § 3108, *survivors'* loss benefits, had not yet been amended to include such an adjustment.

Plaintiff argues that the compensable loss suf-

fered by survivors of a person killed in an automobile accident is subject to the same inflationary pressures as the compensable loss suffered by an injured person and his dependents in a non-fatal automobile accident. Plaintiff further argues that unless the defendant can demonstrate that survivors are less subject to inflationary pressures as compared to persons receiving work loss benefits, this Court should find no rational basis for that distinction. Moreover, the plaintiff believes that her conclusion is buttressed by the fact that the Legislature, after this claim arose, amended § 3108 to include cost-of-living adjustments.

The defendant contends, however, that there is justification in treating the recipients of survivors' loss benefits differently from the recipients of work loss benefits. The justification is the greater relative compensation for a family when the insured dies as compared with the compensation when the insured does not die. The defendant argues that the recipients of survivors' loss benefits receive more spendable compensation than do recipients of work loss benefits because in the case of survivors there is one less person to share the compensation. Under the defendant's reading of the act, the legislative distinction is reasonably related to the objectives of the no-fault scheme which are to provide adequate and prompt reparation while containing the cost of premiums of no-fault automobile insurance.

## B. *The Proper Constitutional Test*

In determining whether socioeconomic legislation like the no-fault act is constitutionally sound, this Court has fashioned a constitutional test, supported by federal case law, which requires the

court to look at both the legislative objectives to be
achieved and the legislative means to be used. See
*Shavers v Attorney General,* 402 Mich 554; 267
NW2d 72 (1978).

The proper test for judging socioeconomic legis-
lation such as the no-fault act was stated in *Shav-
ers* as follows:

"The test to determine whether legislation enacted
pursuant to the police power comports with due process
is whether the legislation bears a reasonable relation to
a permissible legislative objective * * *.
"The test to determine whether a statute enacted
pursuant to the police power comports with equal pro-
tection is, essentially, the same." (Footnotes omitted.)

In the application of these tests, the challenged
legislative scheme is given a presumption of consti-
tutionality. 402 Mich 612-613.

C. *Establishing Permissible Objectives*

Enactment of the no-fault act was a major de-
parture from prior methods of obtaining repara-
tion for injuries suffered in motor vehicle acci-
dents. The Legislature modified traditional tort
principles of compensation by creating a compre-
hensive statutory scheme of reparation with the
objective of providing assured, adequate and
prompt recovery for certain economic losses aris-
ing from motor vehicle accidents. *Miller v State
Farm Mutual Automobile Ins Co,* 410 Mich 538,
568; 302 NW2d 537 (1981); *Belcher v Aetna Casu-
alty & Surety Co,* 409 Mich 231, 243; 293 NW2d
594 (1980); *Shavers, supra,* 579. We have also
recognized a complementary legislative objective
which is the containment of the premium costs of
no-fault insurance. *O'Donnell v State Farm Mu-
tual Automobile Ins Co, supra,* 404 Mich 549, 567.

D. *Applying the Reasonable Relation Test to § 3108*

It is well-established that the party challenging the constitutional propriety of socioeconomic legislation under the reasonable relation test must show that the legislative scheme is without "reasonable justification". See *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 668; 232 NW2d 636 (1975). Since the permissible objective is to provide assured, adequate and prompt recovery for certain economic losses arising from motor vehicle accidents, it cannot be successfully argued that the benefits provided in § 3108 are not reasonably related to the permissible objective of the legislation.

Plaintiff does not appear to deny that the provision of such benefits satisfies due process, but rather focuses on an alleged lack of equal protection. Plaintiff in effect argues that classifying recipients of survivors' loss benefits under § 3108 in a different category from recipients of work loss benefits under § 3107(b), who receive cost-of-living increases which recipients of survivors' loss benefits do not, is arbitrary, because both alike are subject to cost-of-living increases. By this argument, plaintiff attempts to satisfy the obligation to show that the legislative scheme is without "reasonable justification" and to cast the burden of showing reasonableness on defendant.

While plaintiff states a patent truism that the Legislature might wish to consider and, in fact, subsequently did consider, that truism by itself does not meet the requirement for a due process or equal protection challenge. In the face of a due process or equal protection challenge, this Court has stated that its inquiry into a legislative action or judgment is restricted to a determination whether " 'any state of facts either known or which

could reasonably be assumed affords support for it'
[citation omitted]. A corollary to this rule is that
where the legislative judgment *is supported by
'any state of facts either known or which could
reasonably be assumed,'* although such facts may
be 'debatable', the legislative judgment must be
accepted". *Shavers, supra,* 613-614. (Emphasis in
original.) Plaintiff's argument does not meet these
tests.

As a matter of fact, defendant points out that
there are indeed two distinguishing features be-
tween the two categories that could justify the
Legislature's discretion in treating them differ-
ently. First, under § 3107(b), the beneficiaries other
than the injured party have their share of the
benefits reduced by the requirements of the in-
jured party, whereas under § 3108 the injured
party is deceased and has no such requirements.
Second, as we pointed out in *Miller,* survivors' loss
benefits, by definition, are broader than work loss
benefits in providing compensation, because survi-
vors' loss benefits encompass the value of items
apart from and in addition to salary and wages.
This legislative difference led this Court to state
that:

"Since survivors' loss benefits will, in many cases,
include the value of items other than taxable wage or
salary income, while work loss benefits are limited to
wage or salary income, reliance on the language of
§ 3107(b) in the construction of § 3108 is inappropriate."
*Miller, supra,* 564.

We are compelled to assume such a state of facts,
and, thus, we hold that the payment of survivors'
loss benefits without an adjustment for cost-of-liv-
ing increases is reasonably related to the statutory
objective of containing no-fault insurance premi-

ums under the state and federal constitutions. See *Shavers, supra,* 613-614.[6]

## III. CONCLUSION

In light of our reading of § 3107(b) (work loss benefits) and § 3108 (survivors' loss benefits), we hold that the exclusion of cost-of-living adjustments from plaintiff's survivors' loss benefits is reasonably related to the permissible objectives of the no-fault act under the state and federal constitutions. Moreover, the distinction does not violate equal protection or due process of law solely because the Legislature amended § 3108 to include cost-of-living adjustments after the plaintiff was entitled to benefits.

The decision of the Court of Appeals is reversed. We remand the case to the trial court for computation of survivors' loss benefits not inconsistent with this opinion.

Because we have reversed the Court of Appeals affirmance of the trial court's judgment, the plaintiff is not entitled to interest or attorney fees.[7]

COLEMAN, C.J., and KAVANAGH, LEVIN, FITZGERALD, and RYAN, JJ., concurred with WILLIAMS, J.

BLAIR MOODY, JR., J. *(for affirmance).* I respectfully dissent. The most reasonable construction of the legislative action in amending MCL 500.3108; MSA 24.13108 to provide for cost-of-living increases for survivors' loss benefits as well as for

---

[6] For an excellent comparison of this Court's development of equal protection principles with federal case law, see Kelman, *Foreword: Rediscovering the State Constitutional Bill of Rights,* 27 Wayne L Rev 413, 425-428 (1981).

[7] Plaintiff's claims for interest on $111.00 for each of the 36-1/2 thirty-day periods and the award of attorney fees are rendered moot by our reversal of the Court of Appeals and trial court.

work loss benefits is that it represents an attempt
to quickly clarify the original meaning of the no-
fault insurance act rather than to substantively
change the law. Therefore, plaintiff is entitled to
cost-of-living increases on the benefits awarded to
her as her husband's survivor, as initially intended
by the Legislature. Given this view, there is no
need for this Court to address the equal protection
and due process arguments advanced by the plain-
tiff.

In discussing the effect of an amendment upon
the interpretation of a statute, this Court has
noted:

> "While in many and perhaps most instances it un-
> doubtedly is the legislative intent, in enacting an
> amendment, to change existing law, there are, as un-
> doubtedly, other instances, particularly if uncertainty
> exists as to the meaning of a statute, when amend-
> ments are adopted for the purpose of making plain
> what the legislative intent had been all along from the
> time of the statute's original enactment." *Detroit Edi-
> son Co v Janosz,* 350 Mich 606, 614; 87 NW2d 126
> (1957).

The uncertainty in the construction of MCL
500.3108; MSA 24.13108 as compared to MCL
500.3107(b); MSA 24.13107(b) is demonstrated by
the very existence of this litigation. It is also
illustrated by the difficulty the majority has in
attempting to explain why the Legislature might
have distinguished between work loss benefits and
survivors' loss benefits in terms of cost-of-living
increases.

Further, the relative speed with which the Leg-
islature acted when the issue arose lends support
to the conviction that the amendment was not
meant to change the law but rather to correct an

unintended mistake or ambiguity. Finally, the enactment of the amendment indicates that the application of cost-of-living increases to plaintiff's award would not be inconsistent with the purposes of the no-fault act.

Accordingly, I would affirm the decisions of the Court of Appeals and the trial court to require payments of cost-of-living increases for plaintiff's no-fault survivors' loss benefits.