SWARTOUT v STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

Docket No. 86547. Submitted May 7, 1986, at Marquette. Decided
November 18, 1986.

Plaintiff, Constance Swartout, was injured in an automobile
accident. At that time, she was enrolled as a nursing student at
Bay de Noc Community College and was to graduate in June of
1981 with a degree qualifying her as a licensed practical nurse.
Because of her injuries, plaintiff was unable to complete the
semester. She did, however, return to Bay de Noc the following
year and graduated in June of 1982. Plaintiff then obtained
employment with the Dickinson County Memorial Hospital.
Plaintiff brought an action in the Dickinson Circuit Court
against State Farm Mutual Automobile Insurance Company,
her father's no-fault insurer, for work-loss benefits. Plaintiff
moved for summary judgment, submitting an affidavit from
Bay de Noc Community College alleging that, if she had not
been forced to withdraw from school due to the accident,
plaintiff would have graduated in June of 1981. She also
submitted an affidavit from the Dickinson County Memorial
Hospital stating that she would have been employed by the
hospital no later than July 27, 1981, had she received her
degree by that time. The rate of pay to which she would have
been entitled was identified. Defendant responded with its own
motion for summary judgment. The court, John D. Payant, J.,
granted defendant's motion. Plaintiff appealed.

The Court of Appeals *held:*

Plaintiff stated an actionable claim.

1. It is a question for the trier of fact to determine whether
plaintiff would have received income through employment as a
nurse during any of the time she lost as a result of the

REFERENCES

Am Jur 2d, Automobile Insurance § 361.

What constitutes sufficiently serious personal injury, disability,
impairment, or the like to justify recovery of damages outside of
no-fault automobile insurance coverage. 33 ALR4th 767.

Validity and construction of "no-fault" automobile insurance plans.
42 ALR3d 229.

accident. It is also a matter for the trier of fact to determine the amount of lost income attributable to plaintiff's injuries as opposed to the amount of lost income attributable to other factors, if any, such as the scheduling of the academic year.

2. The work-loss provision of the no-fault automobile insurance act should be interpreted in a manner similar to the survivor's benefits provision, i.e., the person seeking work-loss benefits must allege actual loss of income that he would have earned but for the injury. Whether wages would have been received but for the injury is a question of fact for the trier of fact.

Reversed and remanded.

J. H. GILLIS, J., dissented. He would hold that plaintiff's claim is for recovery of future earning capacity. He would affirm.

### OPINION OF THE COURT

1. INSURANCE — NO-FAULT — WORK-LOSS BENEFITS.

The work-loss provision of the no-fault automobile insurance act should be interpreted in a manner similar to the survivor's benefits provision, i.e., the person seeking work-loss benefits must allege actual loss of income that he would have earned but for the injury; a claim for wages which could have been earned in the future is a claim for loss of earning capacity and is not recoverable under the act; whether wages would have been received but for the injury is a question of fact for the trier of fact (MCL 500.3107[b]; MSA 24.13107[b]).

### DISSENT BY J. H. GILLIS, J.

2. INSURANCE — NO-FAULT — WORK-LOSS BENEFITS.

*Recovery of benefits under the work-loss section of the no-fault act requires a plaintiff to allege actual loss of income that would have been earned but for an accident; there must be previous earnings upon which work loss may be calculated; a claim for wages which could have been earned in the future is a claim for loss of earning capacity and is not recoverable under the act (MCL 500.3107[b]; MSA 24.13107[b]).*

*Bruce W. Brouillette,* for plaintiff.

*Geissler & Dean, P.C.* (by *Timothy M. Dean*), for defendant.

Before: T. M. BURNS, P.J., and J. H. GILLIS and M. J. KELLY, JJ.

M. J. Kelly, J. Plaintiff appeals from the circuit court's order summarily dismissing her claim for work-loss benefits under the no-fault act, MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.* We reverse.

Plaintiff was injured in an automobile accident that occurred on April 2, 1981. At that time, plaintiff was enrolled as a nursing student at Bay de Noc Community College and was to graduate in June of 1981 with a degree qualifying her as a licensed practical nurse. Because of her injuries, plaintiff was unable to complete the semester. She did, however, return to Bay de Noc the following year and graduated in June of 1982. Plaintiff then obtained employment with the Dickinson County Memorial Hospital.

Plaintiff filed a complaint against the defendant, which had issued an automobile insurance policy to her father covering work-loss benefits pursuant to MCL 500.3107(b); MSA 24.13107(b). Plaintiff then moved for summary judgment pursuant to GCR 1963, 117.2(2), submitting an affidavit from Bay de Noc Community College alleging that, if she had not been forced to withdraw from school due to the accident, plaintiff would have graduated in June of 1981. Plaintiff also submitted an affidavit from the Dickinson County Memorial Hospital stating that plaintiff would have been employed by the hospital no later than July 27, 1981, had she received her LPN degree by that time. The rate of pay to which plaintiff would have been entitled was identified. Defendant responded with its own motion for summary judgment based on GCR 1963, 117.2(1). In an opinion and order dated July 9, 1985, the trial court ruled in favor of the defendant.

Pursuant to § 3107(b), a no-fault insurer is obligated to pay benefits for work loss, defined as "loss

of income from work an injured person would have performed during the first three years after the date of the accident." An insurer, however, is obligated only to pay benefits for actual loss of income and not for a loss of earning capacity. *Ouellette v Kenealy,* 424 Mich 83; 378 NW2d 470 (1985). The dispositive issue, therefore, is whether plaintiff's complaint stated a cause of action for loss of actual income rather than loss of earning capacity.

The majority of this panel believe that the plaintiff has stated an actionable claim and that it is now a question for the trier of fact to determine whether plaintiff would have received income through employment as a nurse during any of the time she lost as a result of the accident. It is also a matter for the trier of fact to determine the amount of lost income attributable to plaintiff's injuries as opposed to the amount of lost income attributable to other factors, if any, such as the scheduling of the academic year.

We find support for our decision in two cases involving facts similar to the ones presented here. In *Gerardi v Buckeye Union Ins Co,* 89 Mich App 90; 279 NW2d 588 (1979), plaintiff was a full-time nursing student when she was injured in an automobile accident. As in the present case, the injuries suffered by plaintiff in *Gerardi* caused her to delay her studies, prompting her to file an action against her no-fault insurer for income lost as a result of the delay. This Court rejected plaintiff's claim in *Gerardi,* 89 Mich App 95, on the ground that plaintiff was seeking "a loss of wages she could have earned in the future as a registered nurse, but for delay in her studies," which loss was characterized as a loss of earning capacity. In reaching its decision, the Court in *Gerardi* reasoned:

At the time of her injury the plaintiff still had
one year remaining before completion of her nurs-
ing studies. Obviously, plaintiff would not have
been able to work as a registered nurse prior to
her accident; she thus has no previous earnings as
a nurse upon which work loss may be calculated.
Neither can plaintiff demonstrate that during the
year lost as a result of the accident, she would
have received income working as a registered
nurse. Presumably, plaintiff would have spent that
year completing the necessary academic require-
ments. [89 Mich App 95.]

In contrast, plaintiff in the instant case has al-
leged facts which, if believed, would establish the
source of her employment, the exact date of em-
ployment and the exact wages that would have
been received between July of 1981 and June of
1982. In other words, plaintiff has stated a claim
for wages that would, rather than could, have been
earned but for her injuries. We therefore conclude
that plaintiff's claim should have survived defen-
dant's motion for summary disposition.

In *Gobler v Auto-Owners Ins Co,* 139 Mich App
768; 362 NW2d 881 (1984), lv gtd 424 Mich 877
(1986), plaintiff sought to recover survivor's bene-
fits under § 3108, rather than work-loss benefits
under § 3107. Plaintiff's decedent had taken his
last examination as a Michigan State University
student on the day of his automobile accident and
death. Plaintiff claimed that decedent would have
been employed by the United States Forestry Ser-
vice after graduation and that, as his wife, she
would have been entitled to support from that
income. The case went to trial and plaintiff pre-
sented evidence from a staff specialist of the U. S.
Forestry Service. Plaintiff obtained a judgment
and defendant appealed.

This Court analogized claims for recovery of

work-loss benefits and claims for recovery of survivor's benefits, holding that plaintiff was entitled to wages that her decedent "would have received" but for his untimely death. All members of the panel in *Gobler* agreed that whether the decedent would have received wages was a question of fact. The panel disagreed only as to whether the trial court's factual findings were supported by the record.[1]

We conclude that, as in *Gobler,* the question of whether plaintiff would have received income but for her injuries should be left to the trier of fact.

Reversed and remanded.

T. M. BURNS, P.J., concurred.

J. H. GILLIS, J. *(dissenting).* Although the majority has cited the appropriate statute and case law, I disagree with the result it has reached.[1] I believe that the facts in this case are similar to those in *Gerardi v Buckeye Union Ins Co,* 89 Mich App 90; 279 NW2d 588 (1979). In that case, the plaintiff, a full-time nursing student, was injured in an automobile accident. The injuries suffered by the *Gerardi* plaintiff caused her to delay her studies by one year. She sued the defendant no-fault insurer

[1] The dissent in a footnote suggests that we are unaware of the nonprecedential status of *Gobler v Auto-Owners Ins Co,* 139 Mich App 768; 362 NW2d 881 (1984), lv gtd 424 Mich 877 (1986). Obviously quite the contrary is true as I wrote the dissent in *Gobler* and this majority opinion in *Swartout* tracks the spirit of that dissent. The dissent makes an analogy by positing two hypotheticals wherein plaintiff's injuries disable her for two months. We agree that, if plaintiff's injuries are found by a trier of fact to disable her for two months, then that is the measure of her recovery of no-fault benefits, not the full extent of any academic calendar delay which might have ensued.

[1] The majority's reliance on *Gobler v Auto-Owners Ins Co,* 139 Mich App 768; 362 NW2d 881 (1984), lv gtd 424 Mich 877 (1986), is misplaced because that case lacks precedential value as our Supreme Court has granted leave to appeal. *People v Phillips,* 416 Mich 63, 74-75; 330 NW2d 366 (1982).

for the income lost as a result of this delay. 89 Mich App 92.

In rejecting the plaintiff's position, this Court noted that in amending the work-loss provision to provide a method by which benefits could be computed for workers unemployed at the time of their injury, MCL 500.3107a; MSA 24.13107(1), the Legislature "emphasized that the thrust of the work-loss provision in all cases was to calculate loss based on actual earnings, not future possibilities." 89 Mich App 94. The Court concluded:

> A fair reading of the complaint reveals that the plaintiff is in fact alleging a loss of wages she could have earned in the future as a registered nurse, but for the delay in her studies. As pointed out in *Nawrocki* [*v Hawkeye Security Ins Co,* 83 Mich App 135; 268 NW2d 317 (1978)], such an allegation states a claim for recovery of loss of earning capacity, a tort recovery eliminated by the no-fault act. [89 Mich App 95.]

Plaintiff here distinguishes *Gerardi, supra,* on two grounds. First, plaintiff claims the *Gerardi* plaintiff had one additional year of studies beyond the academic year, during which the accident occurred, before graduation. Second, unlike the claimant in *Gerardi,* plaintiff claims she has established that she would have received income working as a nurse for the period for which she argues that she is entitled to work-loss benefits. I agree that these facts prevent reliance upon *Gerardi* without further analysis; however, I believe the result reached by the majority is not mandated by these factual distinctions.

In this case, defendant argues that plaintiff cannot obtain work-loss benefits until she has actually engaged in employment and has received wages for which she now claims a loss. An expec-

tation of employment, defendant argues, no matter how seemingly certain, is still nothing more than one's future earning capacity. I note that to construe § 3107(b) as suggested by defendant ensures that benefits will be paid only for that period of time during which a claimant is incapacitated by his or her injuries. For example, if plaintiff had been employed as a nurse at the time of her accident and, assuming her injuries would have required two months of recuperation, plaintiff would receive work loss benefits for only two months (i.e., the time which had lapsed before she regained her ability to earn wages).

However, a different result follows in the present case if plaintiff's analysis is used. Assuming again a two-month period of recovery, plaintiff would be physically capable of working in June, 1981. But, because she had dropped out of school, she would not be able to obtain employment as a nurse until she received her degree. If the academic calendar requires her to wait until spring to take the necessary classes, plaintiff's receipt of her nursing degree is delayed almost one year. Thus, under plaintiff's proposed resolution of this issue, the defendant is required to pay work-loss benefits for approximately one year when in fact the injury itself prevented plaintiff from working for only two months. Further, despite identical injuries and identical recuperation periods in the two hypotheticals, the benefits payable are dramatically different. The reason for this difference is that the claimant in the second hypothetical sought benefits not for a period during which her injury caused a direct loss of income from work, but rather for a period during which her ability to obtain nursing employment was delayed.

This distinction leads me to conclude that what plaintiff seeks to recover is not benefits for "ac-

tual" loss of income from work she would have performed had she not been injured, *Ouellette v Kenealy,* 424 Mich 83, 87; 378 NW2d 470 (1985), but rather for a "loss of wages she could have earned in the future" as a licensed practical nurse but for the delay in obtaining a degree necessitated by the injuries. *Gerardi, supra* p 95. Therefore, I conclude that plaintiff's claim is properly characterized as an attempt to recover for loss of future earning capacity, and on that basis I would affirm the decision of the trial court.