PEOPLE v TRACY

Docket No. 123393. Submitted June 27, 1990, at Grand Rapids. Decided November 5, 1990, at 9:20 A.M.

Douglas C. Tracy pled no contest in district court to a charge of operating a motor vehicle while having a blood alcohol level of 0.10 percent or greater after the court denied his motion to suppress evidence of the results of a blood test administered pursuant to a search warrant. The court rejected the defendant's claim that reference, in the affidavit submitted in support of the application for the warrant, to the results of a preliminary breath test violated MCL 257.625h(3); MSA 9.2325(8)(3), which provides that the results of a preliminary breath test shall be admissible in certain criminal prosecutions solely to assist the court in determining a challenge to the validity of the arrest. The Kalamazoo Circuit Court, Donald M. Goodwillie, Jr., J., reversed the district court's denial of defendant's suppression motion. The prosecution appealed by leave granted.

The Court of Appeals *held:*

A criminal prosecution commences only on the initiation of judicial criminal proceedings and therefore does not encompass police investigatory procedures, such as the preliminary breath test, unless and until formal charges are filed with the court. Here, use of the results of the preliminary breath test, in connection with the application for the warrant, preceded criminal proceedings against the defendant that were initiated with the issuance to the defendant of an appearance ticket charging him with operating a motor vehicle while under the influence of liquor. Thus, no violation of § 625h(3) occurred.

Reversed.

INTOXICATING LIQUORS — OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF LIQUOR — PRELIMINARY BREATH TEST.

Use of the results of a preliminary breath test administered to a

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic §§ 305, 307, 375, 377-379; Searches and Seizures §§ 29, 105.

See the Index to Annotations under Blood Tests; Breath Tests; Search and Seizure.

motorist suspected of driving while intoxicated as support for an application for a search warrant to obtain a sample of the motorist's blood for alcohol testing is not governed by the statute limiting the admissibility of results from a preliminary breath test in certain criminal prosecutions to cases in which the validity of the arrest is challenged, where such use precedes the issuance of an appearance ticket charging the motorist with operating a motor vehicle while under the influence of liquor (MCL 257.625, 257.625h[3]; MSA 9.2325, 9.2325[8][3]).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Dale S. Murney* and *Michael H. Dzialowski,* Assistant Prosecuting Attorneys, for the people.

*James F. Banhof,* for defendant on appeal.

Before: Murphy, P.J., and Holbrook, Jr., and Maher, JJ.

Holbrook, Jr., J. The prosecution appeals by leave granted from an order of the Kalamazoo Circuit Court reversing the denial of defendant's motion to suppress evidence in the 8th District Court. The district court, in denying the suppression motion, rejected defendant's contention that a search warrant was improperly issued because it was based on the results of a preliminary breath test (PBT). As a result of the warrant, the police were able to obtain a sample of defendant's blood for alcohol content testing. Defendant pled no contest to a charge of operating a vehicle while having an unlawful blood alcohol level, MCL 257.625(2); MSA 9.2325(2), reserving his right to appeal the suppression issue. We reverse the Kalamazoo Circuit Court and reinstate defendant's conviction.

Defendant was discovered at the scene of a one-vehicle accident on November 15, 1988, by a Kala-

mazoo County sheriff's deputy and freely admitted to the officer he was driving the vehicle. Smelling alcohol on defendant, the deputy administered a PBT, the results of which indicated a blood alcohol level of 0.21. Defendant was thereupon arrested for operating a vehicle while under the influence of liquor, MCL 257.625(1); MSA 9.2325(1). Defendant refused to submit to a Breathalyzer test. That same day, Deputy Hemphill, the arresting officer, prepared an affidavit in application for a search warrant, stating he smelled alcohol on defendant's breath and reciting the PBT results of 0.21. The search warrant was issued and the blood test ultimately showed an alcohol content of 0.21 percent.

On January 30, 1989, defendant moved in district court to suppress the blood alcohol level evidence. In making the motion, defendant asserted that MCL 257.625h; MSA 9.2325(8) prohibited the use of PBT results in support of a search warrant because the statute limits the use of PBT results in criminal prosecutions to resolving the question whether the arrest was valid. The district court ruled that PBT results were properly considered by the magistrate issuing the warrant since the PBT results were an investigative tool which the magistrate could consider, no different from other information which, although not admissible at court, may be considered by a magistrate in issuing a search warrant.

Defendant pled no contest to a charge of unlawful blood alcohol level on condition that his right to appeal the PBT issue would be preserved. Upon appeal to the circuit court, the circuit court concluded the statute restricted the use of PBT results to the validity of the arrest issue, reasoning that the "criminal prosecution" referred to in the statute commenced at the time of arrest and so pre-

cluded the use of PBT results in support of an application for a search warrant.

The prosecution's sole issue on appeal is whether the district court erred when it ruled that there were sufficient facts in the search warrant affidavit to justify the seizure of defendant's blood. Stated another way, may the results of a PBT be used to establish probable cause in an affidavit for a search warrant?

A PBT is a preliminary chemical breath analysis of blood alcohol content, normally administered by a law enforcement officer in the field by use of a hand-held instrument. An officer who has reasonable cause to believe someone has been operating a vehicle while under the influence may require that person to submit to a PBT. MCL 257.625h(1); MSA 9.2325(8)(1). An arrest may be based in whole or in part on the PBT results. MCL 257.625h(2); MSA 9.2325(8)(2). Use of the results is restricted by MCL 257.625h(3); MSA 9.2325(8)(3):

> The results of a preliminary chemical breath analysis shall be admissible in a criminal prosecution for a crime enumerated in section 625a(1) or in an administrative hearing under section 625f, solely to assist the court or hearing officer in determining a challenge to the validity of an arrest. This subsection does not limit the introduction of other competent evidence offered to establish the validity of an arrest.

At issue before us is the scope of this limitation. The parties in the lower court apparently agree that without the PBT results the affidavit in support of the search warrant would be insufficient. The parties in the lower court do not agree that MCL 257.625h(3); MSA 9.2325(8)(3) prohibits reliance on the PBT in the affidavit.

The primary goal of judicial interpretation of

statutes is to ascertain and give effect to the intent of the Legislature. *People v Hawkins,* 181 Mich App 393, 396; 448 NW2d 858 (1989); *Joy Management Co v. Detroit,* 176 Mich App 722, 730; 440 NW2d 654 (1989), lv den 433 Mich 860 (1989). The first criterion in determining intent is the specific language of the statute. If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Foster v Stein,* 183 Mich App 424, 426; 454 NW2d 244 (1990); *National Exposition Co v Detroit,* 169 Mich App 25, 29; 425 NW2d 497 (1988), lv den 432 Mich 853 (1989).

Two different readings of the pertinent statute in the case at bar present two arguably valid interpretations. If reasonable minds can differ as to the meaning of a statute, judicial construction is appropriate. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). The court must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction which best accomplishes the statute's purpose. *In re Forfeiture of $5,264,* 432 Mich 242, 248; 439 NW2d 246 (1989). In doing so, the court may consider a variety of factors and apply principles of statutory construction. *Rancour v The Detroit Edison Co,* 150 Mich App 276, 285; 388 NW2d 336 (1986), lv den 428 Mich 860 (1987).

In the only reported case to construe MCL 257.625h(3); MSA 9.2325(8)(3), this Court concluded that one of the purposes of the provision is to prevent the PBT results from being divulged to the jury under any circumstances. *People v Keskinen,* 177 Mich App 312, 319; 441 NW2d 79 (1989), lv den 433 Mich 902 (1989). In so ruling, this Court held that the question of the validity of an arrest was to be decided outside the jury's presence. *Id.* However, *Keskinen* did not address any other

aspects of the statute, nor does its ruling regarding the purpose of the act support or hinder the position of either party at bar. Thus, this Court analyzes the instant issue as a question of first impression.

As we noted previously, the language of a statute is the first criterion to consider. Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning; technical terms are to be accorded their peculiar meanings. MCL 8.3a; MSA 2.212(1); *People v Hicks,* 149 Mich App 737, 742; 386 NW2d 657 (1986), lv den 425 Mich 882 (1986). A court may consult dictionary definitions. *People v Downey,* 183 Mich App 405, 409; 454 NW2d 235 (1990).

Defendant asserts that the crucial word here is "solely" and only argues the meaning of that word. This argument, however, is unhelpful. The clause "solely to assist . . . in determining . . . the validity of an arrest" modifies the statute's enumeration of the admissibility of PBTs in certain proceedings. If the statute were meant to restrict all use of PBTs to "solely" the validity of an arrest, it would have said so. See *Grier v DAIIE,* 160 Mich App 687, 690; 408 NW2d 429 (1987), lv den 429 Mich 901 (1988), recon den 430 Mich 894 (1988). Instead, the limitations imposed by the statute are addressed to the admissibility of the PBT in specified proceedings. The statute does not, for example, limit the use of PBT results in civil proceedings or in criminal proceedings in which the charge is not a drunk driving offense. The crucial question here, then, is what meaning the Legislature intended by the use of the phrase "criminal prosecution."

There is no statutory definition of "criminal prosecution" and so this Court may resort to dictionary definitions. According to the *American Heritage Dictionary, 2d College Edition* (1985),

"prosecution" means the institution and conduct of a legal proceeding. Black's Law Dictionary (5th ed), defines "prosecution" as a criminal proceeding instituted and carried on by due course of law, before a competent tribunal, for the purpose of determining the guilt or innocence of a person charged. These definitions are not particularly helpful because they beg the question whether the investigatory step of obtaining a search warrant is a "legal proceeding."

The Legislature is presumed to be familiar with the rules of statutory construction, and when promulgating new laws is charged with knowledge of existing laws on the same subject. *Victorson v Dep't of Treasury,* 183 Mich App 318, 323; 454 NW2d 256 (1990); *Joe Dwyer, Inc v Jaguar Cars, Inc,* 167 Mich App 672, 684; 423 NW2d 311 (1988). There appear to be no similar laws in Michigan which would aid in understanding the Legislature's intent. The phrase "criminal prosecution," however, appears in Const '1963, art 1, § 20. The scope of the phrase as used in the constitutional provision has not been addressed in any way relevant to the issue in the case at bar. However, the provision appears to have been patterned after US Const, Am VI, which also guarantees the right to speedy trial in all "criminal prosecutions." The scope of "criminal prosecutions" as used in the United States Constitution strongly suggests that the prosecution in the case before us should prevail.

The Sixth Amendment guarantees apply only to criminal prosecutions, which commence only on the initiation of judicial criminal proceedings. *Kirby v Illinois,* 406 US 682, 689-690; 92 S Ct 1877; 32 L Ed 2d 411 (1972). As applied by the United States Supreme Court and several courts of our sister states, this restriction means that police

investigatory procedures are not included until and unless formal charges are filed with the court. *Kirby, supra* (preindictment showup); *Sims v State,* 51 Ala App 183; 283 So 2d 635 (1973) (preindictment showup); *King v State,* 253 Ark 614; 487 SW2d 596 (1972) (preindictment lineup). It does not matter that the suspect has been arrested, *Sims, supra,* nor does it matter that the procedure involves judicial participation. A statutory requirement to participate in an inquisition does not invoke constitutional guarantees premised on "criminal prosecutions" because the petitioners were not charged with any crime. *Ferris v Lockett,* 175 Kan 704; 267 P2d 190 (1954), rev'd on other grds sub nom *Courtney v Schroeder,* 348 US 933; 75 S Ct 355; 99 L Ed 732 (1955).

If the Legislature can be fairly said to have intended the same meaning for "criminal prosecution" in MCL 257.625h(3); MSA 9.2325(8)(3) as is attributed to the phrase in other contexts, the Kalamazoo Circuit Court erred in its interpretation of the PBT statute. Absent any indication to the contrary, we find the Legislature understood the established meaning of the phrase it used and intended that that meaning be applied consistently.

In the case at bar, Deputy Hemphill's investigatory activity, including going before a judicial officer to obtain a search warrant, did not constitute a "criminal prosecution." Only when defendant was formally charged did the process come within the restrictions of the PBT statute. Deputy Hemphill issued an appearance ticket to defendant, charging him with operating a vehicle while under the influence, on November 15, 1989, the same day he obtained the search warrant. Ordinarily, we would remand for a determination

whether the warrant proceedings occurred before or after the issuance of the appearance ticket, but here, the issuance of the ticket must have occurred after the search warrant was obtained, since the charge was premised largely on the blood alcohol level results obtained as a result of the warrant. Because the warrant preceded the appearance ticket, Hemphill's actions in obtaining the warrant occurred before commencement of any criminal prosecution, and the restrictions of MCL 257.625h(3); MSA 9.2325(8)(3) do not apply.

This interpretation of Michigan's drunk driving statutes comports with the overall purpose of the statutory scheme, as well as the apparent intent of the specific restrictions on PBT use. The long-range goal of the drunk driving laws is to reduce the carnage caused by drunk drivers by preventing intoxicated persons from driving. *Wolney v Secretary of State,* 77 Mich App 61, 68-69; 257 NW2d 754 (1977), lv den 402 Mich 877 (1978). The purpose of the PBT use restrictions seems to be to prevent unwarranted convictions based solely on evidence obtained from a testing system which is comparatively unreliable; the breath, blood, and urine test to which all drivers impliedly consent are more accurate and may be administered in more controlled environments than PBTs. See 1984 AACS, R 325.2651 *et seq.*; 1988 AACS, R 325.2651 *et seq.* By permitting use of PBTs during investigations of drunk driving, neither the letter nor the intent of the statute will be violated while the overall purpose of the law will be promoted.

Accordingly, the evidence obtained from execution of the search warrant should not have been suppressed. The circuit court erred in reversing the order of the district court.

Reversed.